DECISION.
{¶ 1} Defendant-appellant Mike Kaeser Towing appeals a jury's award of $10,000 plus attorney fees to plaintiff-appellee Rayshaun Williams for a violation of a bailment and the conversion of an automobile. Because there should have been a setoff of $3,000 from the jury award, we remand this case to the trial court solely to adjust the damage award. All other assignments of error are without merit.
 I. Where are the Car's Rims and Stereo Equipment? {¶ 2} In the summer of 2001, Kaeser towed Williams's automobile from the Aspen Village Apartments, property owned by Fath Properties. Williams claimed that, at the time the automobile was towed, it had chrome rims, modifications to the engine, an expensive stereo and speakers, and personal items inside.
 {¶ 3} The automobile was towed to a Kaeser storage lot, which was surrounded by an eight-foot barbed-wire fence and guarded by a watchdog. When Williams went to retrieve the automobile, he alleged, the owner told him that his automobile could not be located, and that he could not use Kaeser's telephone, and he was ordered off the property. Kaeser employees then turned a door sign from "open" to "closed" in front of Williams and refused to speak further to him.
 {¶ 4} Williams subsequently arranged a time with a Kaeser tow-truck driver to retrieve the automobile. When Williams met the driver and entered the lot to locate his car, he discovered that the body of the vehicle was on the ground. The rims and tires had been removed, and someone had stolen the stereo and speakers.
 {¶ 5} The Cincinnati Police arrived and took an incident report. But Williams refused to remove his automobile or to have it towed. When Williams confronted the owner of Kaeser the following day, the owner insinuated that Williams had likely removed the tires and the rims from the car. At trial, the owner acknowledged that he had treated Williams inappropriately because Williams had dreadlocks, and that he had told people that Williams was a gang member.
 {¶ 6} Williams subsequently sued Fath Properties and Kaeser for discrimination, violating a bailment, and conversion, seeking compensatory and punitive damages. Fath Properties settled the claims with Williams for $3,000 and was released from this action. Kaeser was not mentioned in the settlement and remained a defendant despite its assertion that the settlement agreement was meant to release it from any claims as well. But as we have already ruled, that is not the case.[1]
 {¶ 7} The jury found Kaeser liable on the claims of bailment and conversion. The jury awarded Williams $4,000 for the bailment, $1,000 for the conversion, and $5,000 for punitive damages. Additionally, the jury found that Williams was entitled to attorney fees. After a hearing, the court granted Williams $10,000 in attorney fees plus $720 in prejudgment interest.
 {¶ 8} Kaeser now appeals and argues that the trial court erred by (1) allowing the jury to violate the "same-juror rule"; (2) instructing the jury to set and award attorney fees and then awarding its own judgment for attorney fees; (3) failing to deduct from the judgment the jury's award of "all legal fees and court costs"; (4) failing to deduct the $3,000 payment made by Fath Properties; (5) failing to make an adjustment to the verdict to reflect Kaeser's possessory storage lien; (6) awarding punitive damages; (7) refusing to give to the jury Kaeser's proposed instruction on automobile-storage-lot liability; and (8) providing the jury with the incorrect legal definition of conversion.
 II. Same-Juror Rule {¶ 9} In its first assignment of error, Kaeser claims that the trial court erred by allowing the jury to violate the "same-juror rule." Kaeser cites the Ohio Supreme Court's decision in O'Connell v.Chesapeake Ohio Railroad Co.,[2] where the court held that "[i]n a case tried under comparative negligence principles, three-fourths of the jury must agree as to both negligence and proximate cause, and only those jurors who so find may participate in the apportionment of comparative negligence."[3]
 {¶ 10} Kaeser contends that the jury in this case was confused, arguing that the jurors gave inconsistent responses to the interrogatories, crossed out signatures on one interrogatory, and handwrote additions on another interrogatory. Kaeser's argument is misplaced.
 {¶ 11} Civ. R. 48, following Section 5, Article I, Ohio Constitution, mandates a three-fourths or more jury concurrence in rendering a verdict in a civil action. Somehow Kaeser has construed the jury interrogatories to indicate that the jury was confused, and that the jurors acted improperly. We can find no such evidence in our review of the jury interrogatories — the jury complied with Civ. R. 48.
 {¶ 12} On the general verdict form, all eight jurors found in favor of Williams. In the award of damages, the jurors carried over their findings (from the juror interrogatories) of $5,000 for compensatory damages and $5,000 for punitive damages. The jurors also wrote down that they wanted Kaeser to pay for Williams's attorney fees and court costs.
 {¶ 13} On the jury interrogatories, seven jurors found that Kaeser had violated the bailment at law. Those same seven jurors determined that the appropriate compensatory damages should be $4,000. Six jurors also found that Kaeser committed a conversion of Williams's automobile. Again, those same six jurors determined that the compensatory damages should be set at $1,000, and that Williams was entitled to $5,000 in punitive damages on the conversion claim. There was no instance where a juror determined that Kaeser was not liable for either the bailment or the conversion and then assigned money damages.
 {¶ 14} Kaeser's arguments are incorrect. The O'Connell decision on the same-juror rule was limited to comparative negligence cases. Neither the Ohio Supreme Court nor any Ohio appellate court has expanded that legal analysis to any other situation. We decline to do so now.
 {¶ 15} Additionally, there is nothing in the record to suggest that some jurors determined Kaeser's liability for one claim and that different jurors then decided the compensatory damages for that claim. Although there were two signatures crossed out among the nine interrogatories, the jury fully complied with Civ. R. 48, as at least three-fourths of the jury found that Kaeser had violated a bailment, had committed a conversion, was liable for punitive damages, and should pay Williams's attorney fees.
 {¶ 16} Kaeser's first assignment of error is thus overruled.
 III. Bailment {¶ 17} In its seventh assignment of error, Kaeser argues that trial court erred by refusing to give to the jury its proposed instruction on automobile-storage-lot liability. Kaeser contends that the trial court erred in its instruction on the duty of care owed by Kaeser to Williams.
 {¶ 18} The trial court instructed the jury on Kaeser's duty of care as follows: "If you find by the greater weight of the evidence that the Defendant, Kaeser Towing, received Plaintiffs automobile, failed to exercise the required duty of care for the safekeeping of the property, and the Defendant Kaeser failed to return the automobile to the Plaintiff in the same condition as was received by Defendant, then your verdict must be for the Plaintiff, Rayshaun Williams." Kaeser maintains that the proper instruction on the duty of care should instead have been that commercial bailees must only provide protection for bailed automobiles commensurate with that given "by other automobile storage lots in the same community."
 {¶ 19} A bailment is defined as the delivery of "personal property by one person (the bailor) to another (the bailee) who holds the property for a certain purpose under an express or implied-in-fact contract."[4] Possession alone is transferred, and ownership remains with the bailor.[5]
 {¶ 20} Kaeser contracted with Fath Properties to tow and store impounded cars. In a bailment such as this, an agreement arises where the bailor (Williams — though involuntarily) promises to pay a fee in exchange for the bailee's (Kaeser's) implied promise "to return the bailed item in an undamaged condition."[6] Kaeser did not live up to its end of the bargain.
 {¶ 21} To establish a prima facie case in contract, Williams had to prove (1) the contract of bailment, (2) delivery of the bailed property to the bailee, and (3) failure of the bailee to redeliver the bailed property undamaged at the termination of the bailment.[7] Once Williams established his prima facie case, the burden then shifted to Kaeser to explain its failure to redeliver in an appropriate manner.[8] Thus, to escape liability, Kaeser had to assert and prove some affirmative defense.[9] At trial, Kaeser contended that the damage occurred to Williams's automobile through no fault of its own — essentially arguing no negligence. And Ohio law recognizes the absence of negligence as an excuse for failure to redeliver the bailed property undamaged.[10] But the burden of proof on the issue of Kaeser's conduct remained with Kaeser throughout the proceedings.[11]
 {¶ 22} Thus the question is not whether Williams established negligence, but whether Kaeser established a legal excuse for its breach of contract — failing to redeliver Williams's car undamaged. "So far as [a bailee's duty of redelivery] is concerned, it is erroneous to say that a bailee is liable for negligence. He is liable for not delivering the subject of the bailment, but is excused if it has been lost without fault or want of care of his part."[12] It is a fine distinction, and confusion often arises because of the mix of a seemingly tort standard — negligence — in a contracts case.
 {¶ 23} In the present case, the court provided a proper instruction, as far as it went. The burden was placed on Kaeser to show that it had exercised "the required duty of care for the safekeeping of the property" — Williams's car. While this instruction failed to give the jury any description of the "required duty of care," the proposed instruction would not have been proper either. Because Kaeser did not present any evidence, expert or otherwise, concerning the standard of care of "other automobile storage lots in the same community," the proposed instruction would have had the jury speculate on what that standard was. Additionally, Williams's theory of liability was that it was an "inside job" — since the lot was in fact well guarded, Williams alleged that it was Kaeser's employees who had stripped his car. That, not the standard of care, was the real issue in the case. Thus, Kaeser's seventh assignment of error is overruled.
 IV. Other Jury Instructions {¶ 24} In its second, sixth, and eighth assignments of error, Kaeser challenges various jury instructions. Kaeser specifically argues that the trial court erred by instructing the jury to decide attorney fees, as well as in its instructions on punitive damages and conversion.
 {¶ 25} Generally, a party is entitled to the inclusion of its requested instruction if it is a correct statement of the law applicable to the facts of the case.[13] Jury instructions are proper if they correctly state the law as applied to the facts of the case, and if "reasonable minds can properly reach the conclusion sought by the instructions."[14] And we review purely legal issues de novo.[15]
 {¶ 26} In its second assignment of error, Kaeser maintains that the trial court improperly instructed the jury to determine attorney fees if it awarded punitive damages. Not so. The court stated to the jury that "[i]f you find punitive damages are appropriate, you'll also decide whether the Defendant shall pay attorney fees to the Plaintiff." At no point did the court instruct the jury to determine the amount of the attorney fees — it merely asked the jury to determine if attorney fees should be awarded. The jury ultimately determined that punitive damages and attorney fees were proper. After the jury was dismissed, the court set the amount of attorney fees after a hearing. Thus the court properly handled the issue, and Kaeser's second assignment of error is overruled.
 {¶ 27} In its sixth and eighth assignments of error, Kaeser claims that the trial court erred in instructing the jury on punitive damages, bailment, and conversion. Again, Kaeser's arguments are without merit.
 {¶ 28} Kaeser's sixth assignment of error contends that there was no evidence for the jury to find that it had acted with malice. But the trial court did instruct the jury on malice: "Punitive damages may be awarded against the Defendant as a punishment to discourage others from committing similar wrongful acts. You're not required to award punitive damages to the Plaintiff and you may not do so unless you find by clear and convincing evidence that the Defendant acted with actual malice."
 {¶ 29} It seems that Kaeser is not actually questioning the instruction, but is instead asserting that the jury's verdict against it on punitive damages was against the manifest weight of the evidence. A judgment supported by competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence.[16] And because there was credible evidence from which the jury could have found that Kaeser had acted with malice towards Williams, we overrule Kaeser's sixth assignment of error.
 {¶ 30} In Kaeser's eighth assignment of error, it challenges the jury instruction on conversion. Kaeser maintains that the trial court erred by instructing the jury that it had to find for Williams if an employee of Kaeser exercised dominion over or possession of Williams's automobile. But that was not what the trial court instructed. The trial court charged the jury that "if the Defendant or an employee of the Defendant did exercise dominion or possession over the Plaintiff's automobile and/or items in it which was inconsistent to the Plaintiff's ownership, you must find for the Plaintiff on the charge that defendant committed the conversion."
 {¶ 31} The court did not state that if Kaeser or its employee merely exercised dominion or possession that there would be a conversion — it was an exercise of dominion or possession that interfered withWilliams's ownership of his automobile. The interference with Williams's ownership was the key to a conversion — not mere possession. The trial court did not instruct the jury improperly, and Kaeser's eighth assignment of error is thus overruled.
 V. Attorney Fees {¶ 32} In its third assignment of error, Kaeser argues that the trial court erred by failing to deduct the jury's award of "all legal fees and court costs" included in the verdict from the damage award in the final judgment. Kaeser argues that the jury intended attorney fees and court costs to be included in its award of $5,000 for punitive damages. Kaeser points to the general verdict form, where the jurors wrote in "legal fees and court costs" under the $5,000 awarded as punitive damages. We cannot come to the same conclusion.
 {¶ 33} The court stated to the jury that "[i]f you find punitive damages are appropriate, you'll also decide whether the Defendant shall pay attorney fees to the Plaintiff." And on jury interrogatory number four, the court asked the jury, "If you find that the plaintiff is to receive punitive damages, should the Defendant be required to pay the Plaintiffs attorney fees?" Seven of the eight jurors signed in the affirmative.
 {¶ 34} There is no evidence that the jurors awarded $5,000 in punitive damages, intending that this amount would cover attorney fees as well as punitive damages. Thus, Kaeser's third assignment of error is overruled.
 VI. Post-Verdict Deduction {¶ 35} In Kaeser's fifth assignment of error, it contends that the trial court erred by failing to deduct the amount of its possessory storage lien from the damage award. Because Williams refused to take his automobile after the tires, rims, and stereo equipment had been stolen, Kaeser stored the automobile from July 26, 2001, until December 5, 2003. Kaeser charged the statutory limit of $12 per day and the storage charge amounted to $11,170.
 {¶ 36} But because Kaeser never pursued any counterclaims for the storage charges, and did not present any evidence at trial regarding the amount of the charges, this assignment of error cannot be sustained. Kaeser's fifth assignment of error is overruled.
 VII. Fath Properties' Settlement {¶ 37} Finally, in its fourth assignment of error, Kaeser argues that the trial court erred by failing to deduct the $3,000 payment that Fath Properties' insurer had paid to Williams from the damage award. Kaeser is correct, and Williams's counsel conceded at oral argument that the $3,000 should have been deducted. Under R.C. 2307.33(F), a defendant is entitled to a setoff from a judgment after a plaintiff has received funds from a settlement agreement with a co-defendant, where there is a determination that the settling co-defendant is a fellow tortfeasor. The trial court should have deducted the $3,000 from the damage award. Thus, we sustain this assignment of error.
 {¶ 38} Accordingly, we affirm the trial court's judgment in all aspects but one. The damage award is reversed, and this cause is remanded for the trial court to deduct $3,000 from the damages awarded by the jury.
Judgment affirmed in part and reversed in part, and cause remanded.
HILDEBRANDT, P.J., and HENDON, J., concur.
[1] See Williams v. Fath Properties (June 20, 2003), 1st Dist. No. C-020834.
[2] See O'Connell v. Chesapeake Ohio Railroad Co. (1990),58 Ohio St.3d 226, 569 N.E.2d 889.
[3] Id. at syllabus.
[4] See Black's Law Dictionary (8 Ed. 2004) 151.
[5] See Marcum v. House Towing (Nov. 2, 1998), 12th Dist. No. CA98-05-109, citing Tomas v. Nationwide Mut. Ins. Co. (1992),79 Ohio App.3d 624, 629, 607 N.E.2d 944.
[6] Id., citing Maloney v. Gen. Tire Sales (1973), 34 Ohio App.2d 177,180, 296 N.E.2d 831.
[7] See David v. Lose (1966), 7 Ohio St.2d 97, 218 N.E.2d 442, paragraph one of the syllabus.
[8] See West Am. Ins. Co. v. Stith (1990), 66 Ohio App.3d 605,585 N.E.2d 903, citing Agricultural Ins. Co. v. Constantine (1944),144 Ohio St. 275, 58 N.E.2d 658.
[9] Id. at 99.
[10] Id.
[11] Id., citing Hanlong v. J.E. Miller Transfer Storage Co. (1948),149 Ohio St. 387, 389, 79 N.E.2d 220.
[12] Id., citing 8 American Jurisprudence 2d, Bailments, Section 166.
[13] See Murphy v. Carrollton Mfg. Co. (1991), 61 Ohio St.3d 585,575 N.E.2d 828.
[14] Id.; see, also, Cincinnati Gas Electric Co. v. Chevrolet,153 Ohio App.3d 95, 2003-Ohio-1367, 791 N.E.2d 1016.
[15] See Cleveland Electric Illuminating Co. v. Public UtilitiesComm., 76 Ohio St.3d 521, 1996- Ohio-298, 668 N.E.2d 889;Murphy, 61 Ohio St.3d 585, 575 N.E.2d 828.
[16] See C. E. Morris Co. v. Foley Constr. Co. (1978),54 Ohio St.2d 279, 376 N.E.2d 578.